## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**JONATHAN GUINES**                                                            **PLAINTIFF**

**v.**                                                                    **No. 1:19CV225-GHD-DAS**

**CLAY COUNTY**
**SHERIFF EDDIE SCOTT**
**LARRY COOPERWOOD**
**CITY OF WEST POINT**                                                   **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Jonathan Guines, who

challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison

Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The

plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action

against "[e]very person" who under color of state authority causes the "deprivation of any rights,

privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff

alleges that during his stay in the Clay County Jail, the defendants failed to protect him from attack by

another inmate and failed to provide him with adequate medical care for injuries sustained during that

attack. The plaintiff has not responded to the motion, and the deadline to do so has expired. For the

reasons set forth below, the motion by the defendants for summary judgment will be granted, and the

case will be dismissed with prejudice on the merits, under the doctrine of qualified immunity, and, in

the alternative, for failure to exhaust administrative remedies.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Plaintiff's Claims

This matter arises out of Jonathan Guines' incarceration in the Clay County Jail in 2017. On June 16, 2017, Guines alleges that he was assaulted by fellow inmate Vamario Baskin while in the custody of Clay County. He alleges that Officer Larry Cooperwood watched the assault and failed to protect him from it. Guines alleges that he received medical care for his injuries but claims that the medical care was constitutionally inadequate. Doc. 1, Complaint.

### Undisputed Material Facts[1]

On June 1, 2017, Jonathan Guines was arrested by the City of West Point Police Department for possession of a stolen firearm. *Records Custodian Aff'd, Ex. A - Guines Intake*, CLT (GUINES)-00340. He was booked in to the Clay County Jail on that same date to be held until his court date of June 23, 2017. *Id.* Prior to Guines' arrest, Vamario Baskin was released from the custody of MDOC and, pursuant to a Clay County Circuit Court order, was transferred into the custody of Clay County Jail as a pretrial detainee to await his July criminal trial.[2] *Records Custodian Aff'd, Ex. A - Baskin*

---

[1] The court has drawn the facts of this case from the defendants' memorandum in support of their motion for summary judgment, which is both consistent with the plaintiff's allegations and well-documented.

[2] Baskin was a pretrial detainee while at CCJ, eventually posting bond and being released pursuant to a Clay County Circuit Court order on July 19, 2017. *Records Custodian Aff'd, Ex. A - Bond Order*, CLT-(GUINES)-000371; *Records Custodian Aff'd, Ex. A – Stange Statement*, CLT-(GUINES)-000344. Baskin's charges were ultimately nolle processed, as the witness recanted her statement regarding the assault and indicated it was actually caused by a four-wheeler accident. *Records Custodian Aff'd, Ex. A - Nolle Prosequi Order*, CLT-(GUINES)-000367-68.

*Intake*, CLT-(GUINES)-000356.  Guines was ultimately involved in a fight with Baskin on June 16, 2017.

On June 15, 2017, the day before the incident with Baskin, Guines was transported to North Mississippi Medical Center in West Point, Mississippi after being found shaking on a mat following possible seizure activity.  *Records Custodian Aff'd, Ex. A - Guines Medical Records*, CLT-(GUINES)-000509.  Medical providers noted that Guines was known to officers as having suffered a traumatic brain injury as a child, and they had previously witnessed his seizure activity.  *Id.*  Guines was treated and discharged back into Clay County Custody on that same day.  *Id.*

The following day, June 16, 2017, Guines had sufficiently recovered such that he was able to join outdoor recreation on the Clay County Recreation Yard ("Yard" or "Rec Yard"), where he appears to have walked around having lively conversations with fellow inmates.  *Video 002 (Yard)*.  Mr. Baskin was also on the Yard that day – playing basketball.  *Id.*

The Rec Yard is enclosed by very tall chain link fence and barbwire and has both grass and a large concrete pad for basketball.



*Id.*

The guards' entryway for the Rec Yard is through the second story of the Jail through a locked gate. Once Officers enter the Rec Yard, they must navigate two (2) flights of stairs to make their way onto the yard ground level itself.







*Id.*

While Baskin was playing basketball, he and Guines exchanged words. Although the video does not contain audio, Guines provided an audio statement to officers regarding the incident and told them that Baskin called him a "bitch." *Plaintiff Audio*. Guines contends he asked "what you call me a bitch for…don't call me a bitch…yo mama a bitch." *Id.* Baskin, however, also provided an audio statement to officers regarding the incident, and Baskin recollects that Guines was walking up and down the basketball court telling other inmates how he was going to take their cigarettes and being antagonistic. *Baskin Audio*.

According to Guines, Baskin then began walking aggressively towards him, and, when Baskin got close enough, Guines attempted to strike Baskin first. *Plaintiff Audio*. Guines alleges that he missed, and, when he did so, Baskin grabbed him by his hair. *Id.* Guines states that he struck Baskin two times, but on his third attempt, Baskin blocked the punch and hit him in the jaw twice. Guines told Baskin to let go of his hair, but Baskin allegedly hit him twice more causing him to fall against the fence and ultimately to the ground; he sustained the cuts to his head and mouth when he struck the ground – or concrete blocks on the ground. *Id.*

The video of the incident shows Guines and Baskin having a conversation. After Baskin gave a hard foul in the basketball game, he walked a few steps out from the baseline and placed his hands on his knees. *Video 002 (Yard)* at 8:27:01. Baskin appears to be preparing to play defense. Guines is within six or seven feet of Baskin at the time, standing just off the court in the grass. *Id.* While it is unclear what is being said, video depicts Guines talking to Baskin, who approached Guines and stopped approximately three feet away from him while continuing to converse with him. *Id.* at 8:27:11. Baskin then walked away from Guines back towards the baseline to rejoin the game but was still talking with Guines. *Id.* at 8:27:13-20.

Next, Baskin momentarily rejoined the basketball game by turning around to try and block a shot before reacting to something Guines directed at him in a very animated fashion. *Id.* at 8:27:21. Baskin then walked straight toward Guines; they both took swings at each other – and both missed. *Id.* at 8:27:25. The two men engaged in a struggle for twelve (12) seconds, after which Baskin walked to the other side of the yard from Guines. *Id.* at 8:27:25-37. Again, the entire fight took approximately twelve (12) seconds.

Within five (5) seconds of the first swing, Officer Cooperwood, who was providing security and supervision over the Rec Yard, made his way down the two flights of stairs to restore order. *Id.* at 8:27:30. He arrived on the ground of the Rec Yard ten (10) seconds later, but the fracas was already over. *Id.* at 8:27:40. Only fifteen (15) seconds passed between the first swings and Cooperwood's arrival at the scene. Baskin had retreated, and the guards examined Guines and led him off the Rec Yard. *Id.* at 8:27:57 – 8:28:32. One minute and seven seconds (1:07) elapsed between the first punch and Guines' exit from the yard. *Id.* at 8:27:25 – 8:28:32.

Guines was immediately transported to North Mississippi Medical Center – West Point, Mississippi. *Records Custodian Aff'd, Ex. A – Guines Medical Records,* CLT-(GUINES)-0000462 – 000499. Officers arrived at the NMMC Emergency Room, and Guines was registered at 8:59 a.m. that morning (about 31 minutes from the conclusion of the fight). *Records Custodian Aff'd, Ex. A – Guines Medical Records,* CLT-(GUINES)-000463, 000473. Emergency Room physicians treated him for a large laceration on the right side of his forehead and a laceration inside his mouth on the left side. *Records Custodian Aff'd, Ex. A - Guines Medical Records,* CLT- (GUINES)-000475. Guines was discharged and escorted back to Clay County Jail. *Id. at* 000472.

Later that day, Guines went back to NMMC and was admitted at 6:48 p.m. on complaints of his chest hurting and inability to stay awake. *Records Custodian Aff'd, Ex. A - Guines Medical*

*Records,* CLT-(GUINES)-000421 - 0000461. He was examined, treated, and discharged at 10:31 p.m. *Records Custodian Aff'd, Ex. A - Guines Medical Records,* CLT-(GUINES)-000433.

Two (2) days later, on June 18, 2017, Guines was taken to NMMC-West Point, where a wound on his right shoulder was cleaned and Neosporin applied, as well as sterile strips on his forehead. *Records Custodian Aff'd, Ex. A - Guines Medical Records,* CLT- (GUINES)-000392 - 000401. Guines sought alcohol to clean out his mouth, but the medical provider told him that was not necessary. *Id.*

This court held a *Spears* Hearing on August 27, 2020, which served to clarify Guines' claims. *CM/ECF Doc. Nos.* 10 & 16. Guines testified that he was seen by medical providers multiple times regarding the incident, including follow-up care, and his testimony is fairly consistent with the documents accompanying the instant motion for summary judgment. *Omnibus Hearing Tr.*; *see also Records Custodian Aff'd, Ex. A - Medication Admin. Report,* CLT-(GUINES)-000048 – 000068.

### Failure to Exhaust Administrative Remedies

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock,* 549 U.S. 199, 202 (2007). Congress created the exhaustion requirement to weed out the frivolous claims from the colorable ones. *Id.* at 203.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies *before* filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and

produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought -- monetary damages -- cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

At all times relevant to Guines' allegations, the Clay County Jail ("CCJ") had in place an inmate grievance procedure. *CCJ Grievance Procedure*; *CCJ Grievance Procedure Form*; *Scott Aff'd.* Guines acknowledged that a grievance system was in place at the time of his incarceration, that he was aware of the system, and initiated it by complaining verbally. *Compl.* [1] at 3. Guines did not, however, complete the grievance process. The CCJ allows for inmates to assert grievances informally, which he did by presenting a grievance verbally to Investigator Ramirez. It is unclear whether Guines' grievance involves his claims in this case – or to his desire for Mario Baskin to be charged with assault. Guines, however, did not want the Clay County Sheriff's Department to investigate the incident, as Investigator Ramirez stated in his report:



## Clay County Sheriff Department
P.O. Box 142
330 West Broad Street
West Point, Mississippi 39773
Phone (662) 494-2896
Fax (662) 494-4034

*SHERIFF*
Eddie Scott
(662) 295-5441
*CHIEF DEPUTY*
Ramesi. Williams
(662) 295-1632
*Jail Administrator*
Anthony Cummings
(662) 494-1339

On June 16, 2017, there was an altercation on the basketball court at the Clay County Sheriff's Office between Johnathan Guines and Vamario Baskin. Johnathan was transported to North Mississippi Medical Center. Lt. Smith and Deputy Doss went to the ER to stand by with Jonathan. At this time, Johnathan stated to Lt. Smith that he did not want to pursue charges. On June 30, 2017, I, Chief Deputy Williams, had Johnathan Guines brought down to my office. Johnathan was still in uproar about the incident that occurred between him and Baskin. I attempted to calm him down. Johnathan stated several times that he did not want the Sheriff's Department to handle this case. I stated to Johnathan that he needed to let us handle the case for him. At that time, I took a recorded statement from Johnathan; see statement report. At the end of the interview before he went back up, I stated to Johnathan the process that takes place for a case to go to the grand jury.

I told Johnathan that he needed to inform me before the 1st of September of 2017 if he wanted the case to go forward to a grand jury. As of today, I have not heard back from Johnathan on this matter.

Sincerely,

Chief Deputy Ramirez Williams

*Records Custodian Aff'd, Ex. A - Ramirez Report,* CLT-(GUINES)-000379.

In the CCJ grievance procedure, an informal verbal complaint does not amount to exhaustion of the process. Instead, "[i]f an inmate problem cannot be resolved through informal discussions or the inmate wishes to document the grievance for additional consideration, he may submit a written grievance to the grievance officer/board." *CCJ Grievance Procedure* at 2; *Scott Aff'd.* Hence, if Guines believed that his grievance was unresolved – as Investigator Ramirez informed him – under the CCJ's grievance procedure, Guines should have submitted a formal grievance. *Id.* He did not, however, do so.

Guines knew of the available grievance procedure, and he has not shown that he was incapable of using it. *See Ferrington v. La. Dep't of Corrs.*, 315 F.3d 529, 532 (5th Cir. 2002) (per curiam) (inmate's administrative remedies were available because the prisoner "was well aware of the general procedural requirements described in the inmate handbook"). *See Records Custodian Aff'd.* Guines had no difficulty addressing other concerns with the County, as he filed numerous medical requests during his incarcerations at the Jail. He did not, however, submit a written grievance regarding the assault or medical care. *Id.* As Guines has failed to exhaust his available administrative remedies regarding the fight and his medical care prior to filing suit, the PLRA bars his claims.

### No Direct Involvement of Sheriff Scott in Any Claim; No Involvement of Officer Cooperwood in Medical Care Claim.

The plaintiff has not alleged that Sheriff Scott was personally involved in either failing to protect him or in providing inadequate medical care. Similarly, the plaintiff has not alleged that Officer Cooperwood was personally involved in the alleged denial of medical care. For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756,

768 (5th Cir. 1983)). Indeed, personal involvement "is an essential element of a civil rights cause of action" asserted against an officer in his individual capacity. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

In the present case, Guines has not shown that Sheriff Scott was personally involved in any of his alleged constitutional violations. He has named Sheriff Scott as a defendant in both the failure to protect and denial of adequate medical care claims; however, Guines has alleged no facts to show that Sheriff Scott was personally involved with – or even aware of – his assault or the level of medical care. Similarly, Guines has not alleged Ofc. Cooperwood had any personal involvement with his medical care. In the absence of such a showing, all of the plaintiff's allegations against Sheriff Scott – and the plaintiff's medical care allegations against Ofc. Cooperwood – must be dismissed for failure to state a claim upon which relief could be granted.

## Qualified Immunity

Defendants Scott and Cooperwood are also cloaked with qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97

L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### Qualified Immunity as to Guines' Failure to Protect Claim

Jonathan Guines claims that defendants Scott[3] and Cooperwood failed to protect him from the attack of inmate Baskin. "The Eighth Amendment affords [convicted] prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). The Fourteenth Amendment protects pretrial detainees in the same way. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). Whether the plaintiff is a convict or pretrial detainee, deliberate indifference is the standard of review when prisoners claim denial of medical care or the failure to protect. *Id.* A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An inmate pursuing a claim for failure to protect may prove it by showing that the defendants knew of a specific threat to him but failed to take measures to protect him from it. *Id.* at 843.

---

[3] As set forth above, Sheriff Scott was not present during the altercation between Guines and Baskin; as such, he had no participation in the events and thus must be dismissed from this case. Nonetheless, even if the Sheriff had participated in the incident, he would enjoy qualified immunity on the same basis discussed below.

However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

In this case, Ofc. Cooperwood had no subjective knowledge that Guines faced a serious risk on the Rec Yard. In addition, Guines has not alleged that the defendants knew of any bad blood between himself and Baskins before the fight, and Guines' inmate file has no record to that effect. *Records Custodian Aff'd, Ex. A - Complete Jail File.* The video shows that the fight broke out after Guines and Baskins exchanged words on the basketball court – again indicating that the defendants could not have anticipated the danger to Guines (or Baskins, for that matter). *Video 002 (Yard).* As a matter of reason, an officer cannot be deliberately indifferent to a substantial risk to an inmate's health or safety when the inmate is a victim of an unforeseeable attack. *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (holding an officer was entitled to qualified immunity because "by the time [the officer] knew something was wrong, the fight was already over").

- 14 -

Guines has not shown that Cooperwood subjectively knew that Baskin posed a danger to him. However, even if Guines had made this showing, Cooperwood's actions once the fight broke out reveal that he was not deliberately indifferent to the health and safety of either inmate. Cooperwood began moving towards the combatants within five (5) seconds of the fight breaking out and reached the combatants ten (10) seconds later. *Video 002 – Yard* 8:27:25 – 8:27:37. The entire altercation lasted only twelve (12) seconds – and ended just before Ofc. Cooperwood reached the inmates. *Id.* No evidence suggests that he was subjectively aware of any risk Baskin posed to Guines – or that he deliberately disregarded that risk. As such, Ofc. Cooperwood is entitled to qualified immunity as to Guines' failure to protect claim.

### Qualified Immunity as to Guines' Claim of Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not

- 15 -

rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard applies to pre-trial detainees under the Fourteenth Amendment, as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

Jonathan Guines states that he was taken to the emergency room twice after the incident; he then went to several follow-up visits. He nonetheless contends that he received inadequate medical care because his mouth became infected. He received sutures in his forehead and mouth, but "assum[es]" that the medical providers improperly stitched up his mouth and failed to give him a "shot," thus causing the infection.

Guines relies wholly on his unsupported belief that the medical providers improperly stitched his mouth and failed to give him proper medication. He arrived at the hospital in less than an hour after the fight; he was treated multiple times for his injuries – including several follow-up visits. Nothing in the record suggests that the defendants (or medical providers) were deliberately indifferent to his serious medical needs. He has not shown that either defendant was subjectively aware that he faced a substantial risk of serious harm and failed to take reasonable action to eliminate that risk. *Hare, supra.* He has not shown that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. Nor has he shown that the defendants (who are not medical providers) prevented him from receiving proper care. Instead, he merely disagrees with the treatment he received, and such disagreement does not rise to the level of a claim for denial of adequate medical care. *Gibbs, supra.* As such, the defendants Scott and Cooperwood did not violate clearly established federal law and are entitled to qualified immunity as to the plaintiff's claim of denial of medical care.

### Qualified Immunity as to Guines' Claims of Supervisor Liability

As Sheriff Scott was not personally involved in either of the plaintiff's claims, the plaintiff must be alleging that Scott is liable as a supervisor. The plaintiff alleges that Sheriff Scott should not have adopted a policy permitting convicted inmates and pretrial detainees to be in the Rec Yard together, which he believes led to his injuries at the hands of Baskin. The plaintiff has not identified a jail policy regarding medical care, but the defendants have.

A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor.

- 17 -

*Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim against a supervisor in his individual capacity under § 1983, he must "identify [a] defendant[] who [is] either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

As discussed above, Sheriff Scott was not present during the attack on Guines; neither was he involved in any part of Guines' medical treatment. Thus, Sheriff Scott had no personal involvement in the incidents and could only be held liable for his role as a supervisor – which means that the plaintiff must show that the Sheriff created a policy which led directly to the alleged constitutional violation. *See Wernecke, supra.* As discussed below, the plaintiff has not shown that any policy enacted by the Sheriff was the moving force behind the constitutional violations alleged. As such Sheriff Scott enjoys qualified immunity as to his role as a supervisor.

### Supervisor Liability as to the Jail Medical Care Policy

The CCJ policy regarding medical care for jail inmates is to provide them with necessary

medical care:

> The Clay County provides each inmate with regular access to health care services from a qualified provider to screen, refer and provide basic treatment for ongoing or emerging health care problems.

*See CCJ Medical Policy.*[4] Indeed, based upon the undisputed facts in this case, Guines immediately received medical care for his injuries and had several follow-up visits to the doctor. Guines has not shown that he received unconstitutionally deficient medical care; nor has he identified a county policy that denied or impeded his access to medical care. For these reasons, Sheriff Scott enjoys qualified immunity regarding Guines' claim for his role as a supervisor.

### Supervisor Liability Regarding Sheriff's Policy of Allowing Convicted Inmates and Pretrial Detainees to Use the Recreation Yard Together

First, as set forth above, Vamario Baskin was himself a pretrial detainee (like Guines) during his stay at the CCJ; as such, the policy allowing convicts and pretrial detainees to interact is not relevant to this case. However, even if Baskin had been a convicted inmate, the plaintiff's claim would fail. Jail or prison personnel may not impose conditions or restrictions on a pretrial detainee that rise to the level of punishment, as the detainee has not been adjudicated guilty of a crime. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees may be confined with convicted inmates if the practice is "reasonably related to the institution's interest in maintaining jail security," or the physical facility does not support their separation. *Jones v. Diamond*, 636 F.2d 1364, 1368–69 (5th Cir. 1981) *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & its Loc. No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174, 1178 (5th Cir. 1986). In short, the housing of pretrial detainees with convicted detainees is not *per se* unconstitutional. *Id.*; *see also Truehill v. Lafourche Par.*, No.

---

[4] The document contains provisions regarding various types of medical care, but this language sets forth the overarching policy.

CV 21-1842, 2022 WL 2921228, at *8 (E.D. La. June 22, 2022), *report and recommendation adopted*, No. CV 21-1842, 2022 WL 2918308 (E.D. La. July 25, 2022) (housing convicted inmates with pretrial detainees is not ideal, but is not *per se* unconstitutional).

In this case Guines was not housed with Baskin, but they were both allowed on the recreation yard together. Though Baskin was a pretrial detainee, the Sheriff's policy to allow both convicts and pretrial detainees on the yard at the same time arises out of the department's limited human and monetary resources. *See Scott Aff'd.* Permitting yard call for Guines and a state inmate at the same time thus would not constitute punishment. Finally, as Guines and Baskin had no history of hostility, the Sheriff had no reason to house them separately before their fight. As Sheriff Scott's policies did not violate clearly established federal law, he is entitled to qualified immunity as to the plaintiff's claim regarding permitting pretrial detainees and convicted inmates to mingle during recreation time.

## County Liability

Neither has Guines shown that Clay County is liable for his injuries. To establish county liability under § 1983, a plaintiff must demonstrate that an official policy, custom, or practice caused the constitutional violation alleged. *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995); *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 (5th Cir. 1993). Guines has alleged no facts to indicate that any policy-making officials for Clay County implemented an official policy that caused his alleged constitutional violation; nor has he established a persistent pattern of conduct by city or county officials that caused the alleged constitutional violation. Again, in a § 1983 action, liability may not be imposed upon a governmental entity on a theory of *respondeat superior* for the actions of non-policy making government employees. *Monell*, 436 U.S. at 690-94; *see Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995); *Brown v. Bryan County, Texas*, 53 F.3d 1410, 1418 (5th Cir. 1995). As discussed immediately above, Guines alleges no facts showing

the direct involvement of policy-making officials of Clay County regarding either the housing of convicted inmates and pretrial detainees or the denial of adequate medical care. Neither has he alleged a county policy, custom, or practice as a moving force leading to his injuries. As such, he has not shown that Clay County is liable for his injuries, and his claims against the County must be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### The District Court May Dismiss a § 1983 Action on the Merits and, Alternatively, for Failure to Exhaust

Though this case should be dismissed because the plaintiff failed to exhaust the grievance process before filing it in federal court, the court has also found that it fails on the merits. The court has discretion to dismiss a prisoner § 1983 case both on the merits, and, in the alternative, for failure to exhaust administrative remedies. *See Gonzalez v. Prasifka*, 54 F. App'x 406 (5th Cir. 2002) (District Court "did not err in dismissing [the plaintiff's § 1983] action [on the merits and] on the alternative ground that he failed to exhaust his administrative remedies.")

### Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and all of the plaintiff's claims will be dismissed with prejudice on the merits, under the doctrine of qualified immunity, and, in the alternative, all of his claims will be dismissed without prejudice for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the  3rd  day of November, 2022.

_____
SENIOR U.S. DISTRICT JUDGE